WARNER D. ORVIS et al., Doing Business under the Name of ORVIS BROTHERS & Co., et al., Plaintiffs, *v.* ANDERSON, CLAYTON & Company, Defendant.

First Department, June 11, 1943.

*Donald Marks* of counsel (*Baer & Marks,* attorneys), for plaintiffs.

*Russel S. Coutant* of counsel (*William C. Cannon* and *Frederick G. Watson* with him on the brief; *Davis Polk Wardwell Sunderland & Kiendl,* attorneys), for defendant.

CALLAHAN, J. This action is brought in aid of attachment. Plaintiffs (other than John J. McCloskey, Jr.) are members of the firm of Orvis Brothers & Co., security brokers. Plaintiff McCloskey is the Sheriff of the City of New York.

The defendant is a joint stock association organized under the laws of Texas, and qualified to do business in New York. It is a dealer in cotton, and maintains an office in New York City.

On January 2, 1942, Orvis Brothers & Co. commenced an action in the Supreme Court, New York County, against C. Itoh & Co., Ltd., and Takenosuke Itoh, and a warrant of attachment was issued in said action against the defendants. The defendants were, respectively, a corporation organized under the laws of Japan, and a citizen and national of Japan.

The attachment was served upon the defendant in the present action by the Sheriff of the City of New York.

Defendant certified that it had been previously indebted to C. Itoh & Co., Ltd., and that the indebtedness had been transferred to an account carried in the name of Sanko Kabusiki Kaisya (hereinafter referred to as Sanko) on September 17, 1941. Thereupon the complaint was amended, adding Sanko as a party, and a supplemental warrant of attachment was issued against Sanko which was, in turn, served on defendant.

At the time that the order for the publication of the amended summons was issued (January 29, 1942), this country was at war with Japan, and Sanko was a corporation having its office in, and it was a national of, Japan. Rule 50 of the Rules of Civil Practice then provided: " * * * When it appears by the papers on which the order was granted that the defendant is within a country with which the United States of America is at war, or in a place with which, by reason of the existence of a state of war, the United States of America does not maintain postal communication, the order may dispense with the mailing of any papers to such defendant, and, in lieu thereof, shall direct that such papers be mailed to such officer as may have been appointed by the president of the United States of America to take possession of the property of alien enemies, directed to him in Washington, District of Columbia, on behalf of such defendant."

The officer contemplated by rule 50 as it existed prior to its amendment on March 16, 1942, was the officer whom the President was authorized to appoint pursuant to section 6 of the Trading with the Enemy Act of October 6, 1917 (40 U. S. Stat. 415; U. S. Code, tit. 50, Appendix, § 6). By said statute the President was authorized to appoint " an official to be known as the alien property custodian, who shall be empowered to receive all money and property in the United States due or belonging to an enemy or ally of enemy, which may be paid, conveyed, transferred, assigned, or delivered to said custodian under the provisions " of the Act.

By an Executive Order (No. 6694) which became effective March 2, 1935, the office of the Alien Property Custodian was abolished, and the authority, rights, privileges, powers and duties conferred and imposed on said officer by law were transferred to the Department of Justice to be administered under the supervision of the Attorney-General. This executive order was in full force and effect during the period within which the plaintiffs were required to secure an order for publication in the action against Sanko. It made the Attorney-General the officer appointed by the President to take possession of the property of alien enemies. Instead, however, of having the order which was procured direct that the papers be mailed to the Attorney-General of the United States, plaintiff procured the appointment of an attorney at law to receive copies of the amended summons and complaint, and order of publication, which were served on said attorney in accordance with the order.

It is our view that this failure to comply with the requirements of rule 50 divested the court of jurisdiction which was dependent on an act to be done after the warrant was issued (Civ. Prac. Act, § 825). Failure to serve the summons in accordance with the statute and the rules within the period prescribed by law resulted in the divesting of jurisdiction. (*Blossom* v. *Estes*, 84 N. Y. 614; *Brandow* v. *Murray & Tregurtha Corp.*, 203 App. Div. 47; *Bakalas* v. *Moscahlades*, 203 App. Div. 554.)

Under the circumstances it becomes unnecessary for us to determine the additional question which the parties have presented as to whether the recent amendments to section 916 of the Civil Practice Act altered the rule heretofore prevalent in this State that a debt of a foreign corporation to another foreign corporation was subject to attachment in this State only where the debt had a situs here.

For the reason that jurisdiction has been divested by improper service, we direct judgment for defendant on the submitted controversy, without costs.

MARTIN, P. J., TOWNLEY, UNTERMYER and DORE, JJ., concur.

Judgment unanimously directed in favor of defendant, without costs. Settle order on notice.